# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 17, 2023

**BY ECF**

Honorable Jennifer L. Rochon
United States District Judge
Southern District of New York
New York, NY 10007

Application granted.  For the reasons stated on
the record at today's remand hearing, Mr.
Cardoza's conditions of release are continued.

Dated: May 18, 2023
        New York, New York

**SO ORDERED.**

*Jennifer Rochon*

**JENNIFER L. ROCHON**
**United States District Judge**

Re: **United States v. Jason Cardoza**
    **22 Cr. 468 (JLR)**

Dear Judge Rochon:

      I write in advance of Mr. Jason Cardoza's pre-trial conference scheduled for Thursday, May 18, 2023. On that date, I anticipate that Mr. Cardoza will plead guilty to the charge in the information. For the reasons discussed below, the parties agree that the powder cocaine guidelines should govern the analysis, resulting in a range of 12 to 18 months.  Despite this low guideline range, the defense recognizes that a defendant who pleads guilty to a drug offense punishable by 10 years or more must be detained pending sentencing. See 18 U.S.C. §§ 3143(a)(2), 3142(f)(1)(C).  A court may order release, however, if the defendant shows by clear and convincing evidence that he is not likely to flee or pose a danger to the community, and that there are "exceptional reasons" why detention would not be appropriate. 18 U.S.C. § 3145(c); United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991).

      The defense writes in advance of that plea to request that the Court continue Mr. Cardoza's bail pending sentence. See 18 U.S.C. § 3145(c). He is neither a flight risk nor a danger to the community, and there are "exceptional reasons" why detention would not be appropriate, namely because he is mother's home health aide and sole caretaker.  As supported through a letter from his mother's doctor, Mr. Cardoza's care is essential to the management of his mother's many physical and mental health illnesses as well as day-to-day tasks, including walking and bathing. This, coupled with his exceptional behavior on pretrial release and the possibility of a non-incarceratory sentence, meet the threshold of exceptional reasons to justify Mr. Cardoza's continued release post-plea.

**Standard**

This Court has broad discretion to determine what circumstances qualify as exceptional, a term left undefined in the statute. DiSomma, 951 F.2d at 497. However, exceptional means not the rule, not extraordinary, and as such the test under § 3145(c) is "necessarily a flexible one". United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004). Courts in this District have recognized that a combination of otherwise unexceptional circumstances may be exceptional in the aggregate, see, e.g., United States v. Rentas, 09 Cr. 555 (HB), ECF No. 24, 2009 WL 3444943, at *1 (S.D.N.Y. Oct. 26, 2009) (collecting cases), and have cited to the Ninth Circuit's multi-faceted, non-exhaustive, test for guidance, see, e.g., United States v. Bonczek, No. 09 Cr. 361 (PAC), 2009 WL 2924200, at *3 (S.D.N.Y. Sept. 8, 2009) (citing United States v. Garcia, 340 F.3d 1013, 1019–21 (9th Cir. 2003)). The Ninth Circuit suggests Courts consider "(1) whether the defendant's criminal conduct was aberrational; (2) whether the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail; (3) 'the nature of the violent act itself; (4) the length of the prison sentence; (5) whether prison would impose unusual hardships on a defendant due to illness or injury; (6) the nature of a defendant's arguments on appeal; (7) whether the defendant is exceptionally unlikely to flee or to constitute a danger to the community; and (8) whether the defendant was unusually cooperative with the government." Garcia, 340 F.3d at 1019–21 (internal quotation marks omitted).

Numerous courts in this District have continued bail following guilty pleas to small-scale drug offenses based on an individual's exceptional circumstances. See, e.g., United States v. Cathryn Duran, 14 Cr. 754 (Failla, J); United States v. Ludwig Valdez-Montes De Oca, 15 Cr. 724 (Sullivan, J.); United States v. Gary Carpenter, 14 Cr. 698 (Cote, J.); United States v. Harmon Feaggins, 13 Cr. 494 (Keenan, J.); United States v. Fausto Luis Cruz, 14 Cr. 383 (Pauley, J.); United States v. Marc Gonzalez, 14 Cr. 650 (Abrams, J.); United States v. Patrick Morgan, 14 Cr. 582 (Ramos, J.); United States v. Deshawn Buie, 09 Cr. 1097 (Buchwald, J.); United States v. Joel Ovalles, 12 Cr. 470 (Marrero, J.); United States v. Khalif Blake, 15 Cr. 267 (Failla, J.). Moreover, according to our colleagues at the Federal Defenders in the Eastern District of New York, the practice is to continue bail in these cases. See, e.g., United States v. Jose Sullivan, 16 Cr. 153 (Chen, J.).

Most relevant to this case, courts in this District have continued defendants' bail post-plea when the guideline range is low and the "Court at the time of sentence may not impose a sentence of imprisonment." United States v. Harry Castro, 13 Cr. 478 (Koetl, J.); United States v. Meyer, 14 Cr. 183 (Koetl, J.). As Judge Koetl explained in Meyer, "[i]t would be truly a wrong result to have the defendant incarcerated only to find out after reading the presentence report and considering the factors for sentencing that the defendant is not appropriately sentenced to prison and then the mandatory remand was simply wrong." Meyer, 13 Cr. 478, ECF No. 36 at 4:6–12; see also United States v. Brunson, 16 Cr. 461 (Failla, J.) (leaving a defendant at liberty post-plea despite a significant criminal history because of the possibility of a non-custodial sentence). This makes perfect sense considering that "the primary purpose of the Mandatory Detention Act—to incapacitate violent people—is only weakly implicated when the sentence imposed is very short." Garcia, 340 F.3d at 1019. Notably, in Castro, both parties agreed that where the defendant was a "first-time" offender who pled guilty to a "low-level, nonviolent drug offense," per the DOJ's policy, that remand would not be appropriate given the offense and lack of criminal history – just as in Mr. Cardoza's case. Castro, 13 Cr. 478, ECF. No. 56 at 30-31, 35-36.

## Argument

Mr. Cardoza should remain at liberty post-plea pursuant to 18 U.S.C. §§ 3143(b)(A) and 3145(c). Mr. Cardoza has demonstrated by clear and convincing evidence that he is neither a flight risk nor a danger to the community. According to Mr. Cardoza's pre-trial officer Ashley Cosme, he has been "very compliant" with his supervision with zero problems or hiccups. He has tested negative for his drug tests, has asked for permission each time he wished to leave the house, and has not once violated his home detention or diverted from his approved travel plan. Under her supervision, Mr. Cardoza has successfully participated in and completed the Focus Forward Program. Considering the strict level of supervision and Mr. Cardoza's success pre-plea, he has clearly demonstrated by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(A). Moreover, Mr. Cardoza's case presents a combination of multiple circumstances that courts in this District have found exceptional.

*A.     When accounting for the Guidelines governing this case – the powder Guidelines of 12 to 18 months – remand is inappropriate as Mr. Cardoza will be seeking and may receive a nonincarceratory sentence.*

Although it is premature to make sentencing arguments at this stage, there is a genuine possibility that Mr. Cardoza may receive a non-custodial sentence. According to the plea agreement, Mr. Cardoza's advisory powder cocaine Guidelines range is 12 to 18 months. This factor alone should be dispositive. Indeed, the Mandatory Detention Act was designed to ensure the incapacitation of violent and dangerous offenders—not individuals like Mr. Cardoza.

As discussed above, courts have recognized that the possibility that a defendant may not receive a custodial sentence constitutes an exceptional circumstance. See, e.g., United States v. Harry Castro, 13 Cr. 478 (Koetl. J.), Transcript 29:7–13 (continuing bail post-plea in a drug case and finding that "[e]xceptional circumstances may include a situation where the Court at the time of sentence may not impose a sentence of imprisonment because if the Court were not to impose a sentence of imprisonment, sending the defendant to prison pending sentence would not be reasonable, and that is plainly an exceptional circumstance if the Court in good faith believes that that's a possibility"). Here, Mr. Cardoza has already served eight months in home detention. As his Guideline Range will be 12 to 18 months, there is a strong possibility that once the Court hears Mr. Cardoza's sentencing arguments, that it will be persuaded that additional incarceration would not serve the purposes of the sentencing.

The rationale behind the Government's concession that the appropriate Guidelines in this case should be the powder Guidelines, rather than crack cocaine, is well documented. The crack-cocaine Guidelines are deeply flawed. Initially pegged at 100 times more severe than the powder-cocaine Guidelines, the ranges were not based on empirical data or national experience, but instead were pegged to the mandatory minimum sentences set in the Anti-Drug Abuse Act of 1986. See Kimbrough v. United States, 552 U.S. 85, 109 (2007). For decades, the Sentencing Commission sought to reduce the disparity, which resulted in disproportionately harsh sentences for defendants convicted of selling crack, who were predominantly people of color. See generally United States v. Gardner, 20 F. Supp. 3d 468, 470-471 (S.D.N.Y. 2014) (explaining that the Commission suggested a ratio of 1-to-1 as early as 1995).

In 2010, Congress reduced the disparity from 100-to-1 to 18-to-1, where it currently stands. See Gardner, 20 F. Supp. 3d at 471. As many courts have found, though, the 18-to-1 ratio was based on the same discredited assumptions and lack of empirical rationale as the 100-to-1 ratio. See id. at 473 (adopting a 1-to-1 ratio); see also United States v. Whigham, 754 F. Supp. 239, 246 (D. Mass. 2010) ("I will apply a 1:1 ratio for all crack cocaine sentencings"); United States v. Williams, 788 F. Supp. 2d 847, 891-92 (N.D. Iowa 2011) ("I must reject the Sentencing Guidelines using the 'new' 18:1 ratio, just as I rejected the Sentencing Guidelines using the 'old' 100:1 ratio, based on a policy disagreement with those guidelines, even in 'mine-run' cases, such as this one. I must do so, because I find that the 'new' 18:1 guidelines still suffer from most or all of the same injustices that plagued the 100:1 guidelines, including the failure of the Sentencing Commission to exercise its characteristic institutional role in developing the guidelines, the lack of support for most of the assumptions that crack cocaine involves greater harms than powder cocaine, the improper use of the quantity ratio as a 'proxy' for the perceived greater harms of crack cocaine, and the disparate impact of the ratio on black offenders.").

Notably, since the Government's inclusion of this powder cocaine footnote in its plea agreements and Pimentel letters, the defense has been unable to find even one case where a court within this District has declined to apply the powder cocaine guidelines in a case involving the distribution of crack cocaine. See, e.g., United States v. Blyden, 22 Cr. 265 (ER) (adopting the 46-57 months powder Guidelines in a crack cocaine case where the Guidelines were initially 87-108 months); United States v. Leahr, 19 Cr. 913 & 20 Cr. 61 (SHS) (adopting the 37-46 months powder Guidelines in a crack cocaine case where the Guidelines were initially 87-108 months); United States v. Perez et al., 21 Cr. 499 (PAE) (adopting the powder Guidelines to establish a 1-to-1 ratio for each defendant that pled to the distribution of crack cocaine); United States v. Sylvester, 21 Cr. 358 (VSB) (adopting the 24-30 months powder Guidelines in a crack cocaine case where the Guidelines were initially 70-87 months).

As of this writing, there is strong bipartisan support in Congress to retroactively eliminate the disparity between crack and powder cocaine, legislation which the Department of Justice strongly supports:

> The Department strongly supports the [Equal Act], for we believe it is long past time to end the disparity in sentencing policy between federal offenses involving crack cocaine and those involving powder cocaine. The crack/powder sentencing disparity has unquestionably led to unjustified differences in sentences for trafficking in two forms of the same substance, as well as unwarranted racial disparities in its application. The sentencing disparity was based on misinformation about the pharmacology of cocaine and its effects, and it is unnecessary to address the genuine and critical societal problems associated with trafficking cocaine.

Dep't of Justice, Statement before the Judiciary Committee for a hearing entitled examining federal sentencing for crack and powder cocaine, at 1 (June 22, 2021). As Associate Attorney General Vanita Gupta further explained, "the current sentencing differential between crack and

powder cocaine is not based in evidence and yet has caused significant harm in particular to communities of color. It's past time to correct this."[1]

In addition to Mr. Cardoza's decreased Guidelines exposure when applying the powder Guidelines, the defense will also ask this Court, when applying the 3553(a) factors, to consider the fact that zero-point offenders, like Mr. Cardoza, will soon benefit from a two-level offense level reduction when the United States Sentencing Commission's adopted amendments take effect in November 2023. See U.S. Sent'g Comm'n, Adopted Amendments 2023 at 87-88.[2]  Indeed, according to the Commission's 2023 amendments, the two-point offense level reduction for defendants, like Mr. Cardoza, that have zero criminal history points is to account for the "considerably lower recidivism rates than other offenders, including offenders with one criminal history point."  U.S. Sent'g Comm'n, Adopted Amendments 2023 at 79 (citing U.S. Sent'g Comm'n, Recidivism of Federal Offenders Released in 2010 (2021), available at https://www.ussc.gov/research/researchreports/recidivism-federal-offenders-released-2010).   In supporting this amendment, the Commission noted that "[a]mong other findings, the report concluded that 'zero-point offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category."  Id. at 79.  Indeed, were this Court to apply the two-level reduction to Mr. Cardoza's case, his powder Guidelines would decrease to 8-14 months – a Zone B sentence, which, pursuant to § 5C1.1 of the Sentencing Guidelines, can be satisfied through a term of home detention – a sentence Mr. Cardoza has already successfully completed.

In light of the Government's position and the national consensus among federal courts on this issue, there is no question that the powder Guidelines of 12-18 months are the applicable Guidelines range in Mr. Cardoza's case.  Given this low Guidelines range as well as numerous other mitigating factors, including the pending amendments for zero-point offenders, the defense will be seeking a sentence of time served at sentencing.  As there is a real possibility that Mr. Cardoza could receive a time served sentence in this case, it would be a grave injustice to remand him at this juncture.  Indeed, the possibility of a time served sentence, considered in the aggregate with the other considerations discussed more fully below, rise to the level of an exceptional circumstance that warrant Mr. Cardoza's continued release.

**B.**      ***Mr. Cardoza's role as the sole caregiver for his mother, who suffers from serious medical and mental health conditions and cannot complete day-to-day tasks, rises to the level of an exceptional circumstance warranting his continued release.***

Courts have recognized that providing necessary care for family members and a defendant's contributions to society constitute exceptional circumstances. See, e.g., United States v. Robert Vital-Perez, 15 Cr. 683 (Ramos, J.) (declining to remand defendant because he was the

---

[1] DOJ Press Release, Readout of Justice Department Leadership Meeting with FAMM (March 1, 2022), available at: https://www.justice.gov/opa/pr/readout-justice-department-leadershipmeeting-famm.

[2] Available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023.

primary caretaker for his children); <u>United States v. Loaiza-DeVilla</u>, 1996 W.L. 132121 (SDNY 1996) (Haight, J.); <u>see also</u> <u>Rentas</u>, 2009 WL 3444943, at *1 (collecting cases).

The Court's decision in <u>Rentas</u>, is instructive. In <u>Rentas</u>, the defendant was a single mother for her daughter who suffered from "hyperactivity and insomnia." 2009 WL 3444943, at *2. Just as Mr. Cardoza, the <u>Rentas</u> defendant had no prior criminal history, the offense did not involve violence, and she was fully compliant with the conditions of her release. <u>Id.</u> at *2. Even though the defendant's sister was temporarily caring for her daughter, the court determined that the defendant should remain at liberty until sentencing as "[h]yperactivity and insomnia are legitimate medical issues, and require significant time and care." <u>Id.</u> "Given her young daughter's medical history," the court determined that there were exceptional circumstances to justify the defendant's release pending sentencing. <u>Id.</u>

There is no question that the medical needs present in Mr. Cardoza's case are even more egregious than those presented in <u>Rentas</u>. Here, Mr. Cardoza works as a home health aide for his mother, Janet Mora. As Ms. Mora's physician notes in his letter of medical necessity, Ms. Mora is currently diagnosed with numerous physical and mental health issues, including, but not limited to, ███████████████████████████████████████████ – conditions that are categorically more dangerous and life-threatening than those posed in <u>Rentas</u>. <u>See</u> Letter of Medical Necessity from Dr. Barry Zingman, attached as Exhibit A. Since Mr. Cardoza is in home detention, he cares for his mother on a 24 hours per day and seven days per week basis. As corroborated through Officer Cosme, who has personally observed Ms. Mora during her home visits with Mr. Cardoza, Ms. Mora suffers from serious mobility issues and has difficulty completing day-to-day tasks, including walking, using the restroom, and bathing herself. His sister, Taina Rodriguez, confirms as much in her letter to the Court, "[h]e prepares all her meals, cleans the house, does the laundry, assists her with going to the bathroom, bathing, and ensuring she is taking her medication correctly." Letter of Taina Rodriguez, attached as Exhibit B. Ms. Mora's physician has also made clear that she "is reliant on her home health aide, Jason Cardoza, to assist with all ADLs [activities of daily living]." Ex. C. To remand Mr. Cardoza to prison — even for a short period of time—will compromise the safety and health of his mother. Indeed, the fact of his mother's condition and her reliance on Mr. Cardoza to assist with such intimate tasks, on its own, is sufficient to justify the continuance of bail. <u>See, e.g.</u>, <u>United States v. Hooks</u>, 330 F. Supp. 2d 1311, 1313-14 (M.D. Ala. 2004) (finding lack of available care for three children to be exceptional). However, when viewing the many other factors in conjunction with his mother's medical needs, it is even more evident that these are exceptional circumstances warranting continued release.

**C.    Mr. Cardoza's outstanding compliance with the terms of pretrial release while in home detention warrants continued release on bail.**

Mr. Cardoza's behavior while on pre-trial supervision should be considered—when combined with his family responsibilities and low guidelines—as an exceptional circumstance. Mr. Cardoza has fully complied with pre-trial supervision, having served successfully on home detention since September 2022. Mr. Cardoza has now spent eight months with his liberty significantly curtailed. Courts have found exceptional circumstances where defendants on bail have done well with work or similar activities that would be disturbed by mandatory remand. <u>See</u>

Rentas, 2009 WL 3444943, at *1 (collecting cases and ordering release in drug case based on performance on bail, limited role and family-care needs); United States v. Torres, 09 Cr. 832 (Cote, J.) (although defendant pled guilty to (b)(1)(A) weight drugs, allowed to stay at liberty because he was compliant with pretrial, was not a flight risk, maintained a stable residence, he was on the cusp of starting job and was expecting a child in January); United States v. Rosario, 12 Cr. 513 (Castel, J.) (defendant was allowed to remain at liberty pre-sentence and was sentenced to 24 months in prison); United States v. Campbell, 2022 WL 2209371 (S.D.N.Y. June 21, 2022) (declining to remand the defendant, over the Government's objection, where the defendant faced no mandatory minimum sentence, was not a leader of the drug conspiracy, "maintained stable employment, made progress in marijuana treatment program, and complied with the conditions of bail.").

In addition to his perfect compliance with pretrial release and familial obligations, Mr. Cardoza also completed the Focus Forward Project. The Focus Forward Project is "a nonprofit organization dedicated to providing an educational curriculum focused on reentry for individuals charged with federal crimes." Letter from Focus Forward Project, attached as Exhibit C. Through this program, Mr. Cardoza attended weekly meetings, completed reading, journaling, and other homework assignments with the goal of developing life skills and tools to ensure successful reentry into society. As his class facilitators note, "[d]espite struggling with insomnia, caring for his ill mother, and tragic personal situations, in particular the death of a friend due to an overdose, [Mr. Cardoza] was always on time and prepared for class with his homework assignments including reading and journal entries completed." Ex. C at 2. Overall, Mr. Cardoza "was a very valued member of our group who demonstrated a commitment to making the most of the program by thoroughly preparing for each session and then thoughtfully participating." Ex. C at 4. The facilitators further noted that Mr. Cardoza "is motivated to advance in his career, to help his mother and other family members, and to take positive steps 'one day at a time' to become the best version of himself." Id.

Mr. Cardoza served as such an important member of the Focus Forward Project that they recently invited him back to speak to new graduates of the program. In defense counsel's conversation with Pretrial Officer Cosme, she remarked she had never previously had a supervisee asked to return to the program to speak at the graduation of the Focus Forward Project and noted that it was a sign of Mr. Cardoza's great success there.

## Conclusion

In light of Mr. Cardoza's flawless compliance with pre-trial supervision, his obligations to care for his mother's health, and the likelihood of time served sentence, Mr. Cardoza should remain at liberty with the same stringent bail conditions pending sentencing. We respectfully urge the Court to continue his bail pending sentencing.

In the alternative, we ask the Court to consider deferring formal acceptance of the plea until the sentencing date. See United States v. Buie, 09 Cr. 1097 (Buchwald, N.) (S.D.N.Y. 2010) (deferring acceptance of plea until sentencing date in "mandatory" remand case); United States v. Walden, 08 Cr. 525 (Kaplan, J.) (S.D.N.Y. 2008) (deferring acceptance of plea until close to date of sentencing case and imposing sentence of probation with intermittent confinement). Indeed, 18

U.S.C. § 3143(b) does not explicitly say that the remand must be immediate and the Court could order a surrender date. If the Court believes that route to be appropriate, we ask that the Court still order a Presentence Report prior to the date of sentencing.

Respectfully submitted,

/s/ *Marisa K. Cabrera*

Marisa K. Cabrera
Assistant Federal Defender
Tel.: (212) 417-8730

**cc: Thomas Burnett, Esq., Assistant United States Attorney**
**Jonathan Bodansky, Esq., Assistant United States Attorney**